IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **JAY B. LEDFORD,** | * | |
| Petitioner, | * | |
| | | **Civil Action No.: RDB-20-3248** |
| v. | * | **Criminal No.: RDB-18-0465** |
| **UNITED STATES OF AMERICA,** | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 6, 2019, Petitioner Jay Ledford ("Petitioner" or "Ledford") pled guilty to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349; aggravated identity theft, in violation of 18 U.S.C. §1028A; and money-laundering in criminal funds in excess of $10,000, in violation of 18 U.S.C. § 1957. (Arraignment, ECF No. 86.) His pleas of guilty arose from a Ponzi scheme[1] defrauding investors of millions of dollars. The Plea Agreement, which was introduced as Government Exhibit 1, specifically provided that the Government as well as the Defendant "reserved the right to advocate for a reasonable sentence," that the Court was not a party to the Agreement, and that "[t]he sentence to be imposed [was] within the sole discretion of the Court." (ECF No. 87 ¶¶ 9, 18.) The Agreement also included stipulations as to the factual basis for the charges against Ledford, including the loss amount between $250 and $550 million, and corresponding guidelines stipulations based upon those facts. (Plea

---

[1] A "Ponzi scheme" is a "fraudulent investment scheme in which money contributed by later investors generates artificially high dividends or returns for the original investors, whose example attracts even larger investments. Money from the new investors is used directly to repay or pay interest to earlier investors, usu[ally] without any operation or revenue-producing activity other than the continual raising of new funds." Ponzi Scheme, *Black's Law Dictionary* (11th ed. 2019).

1

Agreement Exh. A, ECF No. 87-1; ECF No. 87 ¶ 6.)  On October 29, 2019 this Court sentenced Ledford to 168 months (14 years) of incarceration.  (ECF Nos. 166, 169.)

On November 9, 2020, Petitioner Ledford filed a *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (ECF No. 244).[2]  On December 11, 2020, Ledford was appointed counsel.  (ECF No. 251.)  On January 23, 2021, the Government filed a Response in Opposition to Ledford's Motion.  (ECF No. 260.)  Ledford, through his appointed counsel, filed a Reply on March 3, 2021.  (ECF No. 266.)  The parties' submissions have been reviewed and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2018).  For the reasons set forth below, Petitioner's Motion to Vacate pursuant to 28 U.S.C. § 2255 (ECF No. 244) is DENIED.

## BACKGROUND

Beginning in 2013, Petitioner Ledford and Kevin B. Merrill ("Merrill") were involved in a Ponzi scheme in which Ledford created false banks statements, collections reports, tax returns, and other documents in order to induce prospective customers to invest in consumer debt portfolios.  (ECF No. 87-1.)  Ledford and Merrill diverted their investors' funds and collections for their own personal benefit.  (*Id.*)  From 2013 to September 2018, their scheme collected more the $394 million, and at the time of their arrests, Merrill and Ledford were completing due diligence on an additional investment of $260 million.  (*Id.*)  The actual and attempted loss figure was stipulated to be over $250 million but less than $550 million.  (*Id.*)  On September 11, 2018, Ledford, Merrill, and Cameron R. Jezierski were indicted by a Grand

---

[2] Petitioner Ledford has also filed an Emergency Motion for Compassionate Release (ECF No. 256).  That motion will be addressed in a separate Memorandum Opinion and Order.

Jury and charged with conspiring to commit interstate wire fraud by devising a scheme and artifice to defraud investors in consumer debt portfolios, in violation of 18 U.S.C. § 1349; individual counts of wire fraud, in violation of 18 U.S.C. § 1343; aggravated identity theft, in violation of 18 U.S.C. § 1028A; conspiracy to launder criminal proceeds, in violation of 18 U.S.C. § 1956(h); and individual money laundering offenses in violation of 18 U.S.C. § 1957.[3]

On June 6, 2019, Petitioner Ledford, after being placed under oath, pled guilty to conspiring to commit wire fraud, in violation of 18 U.S.C. § 1349; aggravated identity theft, in violation of 18 U.S.C. §1028A; and money-laundering in criminal funds in excess of $10,000, in violation of 18 U.S.C. § 1957.  (ECF No. 86.)  The Plea Agreement includes a description of the crimes for which Ledford was charged and their maximum penalties and an explanation of the rights waived by signing the agreement.  (ECF No. 87 ¶¶ 1-4.)  The Agreement also includes factual and advisory guidelines stipulations.  (*Id.* ¶ 6; *see also* Exh. A, ECF No. 87-1.) For example, Ledford and the Government stipulated to an attempted loss amount of over $250 million but less than $550 million, which resulted in an additional 28 level upward adjustment under the advisory guidelines.  (*Id.*)  The parties stipulated to a total offense level for all offenses of 40 and that the aggravated identity theft required a mandatory consecutive two-year sentence.  (ECF No. 87 ¶ 6.)  However, in consideration of Ledford's acceptance of responsibility, the final offense level was calculated to be 37.  (*Id.*)

The Plea Agreement also provides the "Obligations of the Parties," including the statement that "[a]t the time of sentencing, [the Government] and the Defendant reserve the

---

[3] The Grand Jury superseded the Indictment on January 8, 2019, however, this did not affect the charges against Ledford. (ECF No. 60.)  Merrill and Jezierski ultimately pled guilty to criminal charges.  Merrill was sentenced to 22 years incarceration and Jezierski received a sentence of 2 years of incarceration and one year of home confinement.

3

right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a)." (*Id.* ¶ 9.) The Agreement further states:

> The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

(*Id.* ¶ 18.) The Agreement concludes with the statement that the letter, together with a sealed supplement, represent "the complete plea agreement" in the case and that there are "no other agreements, promises, or conditions between [the Government] and the Defendant." (*Id.* ¶ 19.) Directly above the Petitioner's signature on the final page of the document is the statement:

> I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

(*Id.* at p. 10.)

At Ledford's arraignment on June 6, 2019, this Court asked several questions of Ledford, who was under oath, before he officially entered his guilty plea pursuant to the Plea Agreement. (*See* Arraignment Tr. at 5, 9.) This Court asked whether he had discussed with

4

his attorney the charges against him, details with respect to witnesses against him, and the possibility of a trial and appeal if he was found guilty. (*Id.* at 1-11.) Ledford was also asked whether he was "fully satisfied" with the representation of his attorney, Harry Trainor. (*Id.* at 11.) The Petitioner specifically stated that Trainer had used "good communication" and had "helped him understand the charges" and confirmed that there was nothing that he had asked Trainor to do that he had not done. (*Id.*) Ledford also identified the Plea Agreement, the stipulated facts, and the sealed supplement, as well as his signature on those documents. (*Id.* at 12.) He confirmed that he had the opportunity to read and discuss the Agreement and asserted that no one had made any other promises or assurances to him besides what was set out in the Agreement and its attachments. (*Id.*)

At the arraignment, this Court reviewed the entire sentencing process with Ledford. Ledford acknowledged, as detailed in the Agreement, that the Court was not bound by the terms of the Agreement and could impose a sentence that might be more severe or more lenient than the suggestions made by the parties. (*Id.* at 20.) This Court explained that it would consider a variety of factors in making its sentencing decision. (*Id.* at 28-29.) The Court also explained that Ledford would meet with a probation officer, who would be in charge of writing a presentence investigation report for the Court. (*Id.* at 29.) Ledford confirmed that he understood the guidelines stipulations and sentencing ranges suggested in the report would not be binding on the Court and that both Ledford and the Government would be free to argue for what each believed to be a reasonable sentence. (*Id.* at 30-36.) The Court specifically asked Ledford, "you understand that the sentence imposed by me could be different from any estimate which Mr. Trainer has given you, because he can't predict exactly what I am going to

do, because I don't know what I'm going to do until I review . . . the presentence report?" (*Id.* at 37.) To this, Ledford responded, "Yes, Your Honor." (*Id.* at 38.)

Nevertheless, Petitioner Ledford now claims that he did not have an understanding of the sentencing process and that he was in fact not satisfied with the representation of his attorney. Ledford alleges in his Section 2255 Motion that his attorney specifically promised him that he would receive a ten-year sentence if he pled guilty and cooperated with the authorities in his case, and that such assurances were why he did in fact plead guilty. (ECF No. 244 at 6.) This cooperation included not only the criminal case brought against him but the civil case for damages brought by the Securities and Exchange Commission. Ledford asserts that after pleading guilty, Trainor continued to tell him he would be receiving a ten-year sentence. (Decl. Ledford ¶ 27, ECF No. 244.) He further alleges that he believed his attorney's claims, stating that he was "duped" into believing that this Court was going to give him such ten-year sentence. (*Id.* ¶ 31.) Ledford also contends that he attempted to participate in the preparation of a defense of the "loss calculation" as provided in the Plea Agreement and continuously attempted to inform his attorney that the calculation was "grossly overstated" and incorrect. (*Id.* at ¶ 15.) He asserts that his attorney refused to consider his attempts to assist and consistently directed him to cooperate with the prosecution and submit to whatever they had requested of him. (*Id.* at ¶ 16.)

On October 29, 2019, this Court sentenced Ledford to a total term of 168 months (14 years). (ECF Nos. 166, 169.) This Court selected such sentence, despite the presentence report's recommendation of 210 to 262 months (17.5 years to 23 years), in consideration of Ledford's cooperation in both the criminal and civil cases. Ledford submitted a handwritten

letter to this Court prior to his sentencing in which he told the Court that he was "highly motivated to repair [his] wrongs," and that he was committed to cooperating with the government, "not only because it's the right thing to do, but also to provide the best possible outcome for the financial benefit of the victims as well as the Government's prosecution." (ECF No. 149-1.)

On November 9, 2020, Ledford filed the presently pending Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 244.) He argues that he was denied his right to effective assistance of counsel under the Sixth Amendment to the U.S. Constitution during plea negotiations with the Government. (*Id.*) Ledford specifically cites his attorney's assurances that he would receive a ten-year sentence and the error in the loss amount as grounds for his claim. (*Id.*)

## STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner in custody may seek to vacate, set aside, or correct his sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or laws of the United States, (2) the court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is otherwise subject to a collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 386 U.S. at 428 (1962)).

The scope of § 2255 collateral attack is far narrower than an appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). Thus, procedural default will bar consideration under § 2255 of any matters that "could have been but were not pursued on direct appeal, [unless] the movant shows cause and actual prejudice resulting from the errors of which he complains." *United States v. Pettiford*, 612 F.3d 270, 280 (4th Cir. 2010) (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)).

## ANALYSIS

To state a claim for relief based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 671 (1984). The first, or "performance," prong of the test requires a showing that defense counsel's representation was deficient and fell below an "objective standard of reasonableness." *Id.* at 688. In making this determination, courts apply a strong presumption that counsel's actions fell within the "wide range of reasonable professional assistance." *Id.* at 688-89. The second, or "prejudice" prong, requires that a petitioner demonstrate that his counsel's errors deprived him of a fair trial. *Id.* at 687. In applying the *Strickland* test, the U.S. Court of Appeals for the Fourth Circuit has noted that there is no reason to address both prongs if the defendant makes "'an insufficient showing on one.'" *Moore v. Hardee*, 723 F. 3d 488, 500 (4th Cir. 2013) (quoting *Strickland*, 466 U.S. at 697). Thus, ineffective assistance of counsel claims may be disposed of based solely on a deficiency in satisfying either the "performance" prong or the "prejudice" prong. *See Strickland*, 466 U.S. at 697. The Fourth

Circuit has noted further that the mere possibility of a different trial result does not satisfy the burden of proving prejudice. *Hoots v. Allsbrook*, 785 F.2d 1214, 1221 (4th Cir. 1986).

In his Section 2255 Motion, Petitioner asserts that he received ineffective assistance of counsel arguing that his counsel (1) assured him that he would receive a ten-year sentence if he pled guilty and cooperated with the Government, and (2) failed to correct the loss amount stipulated in the Plea Agreement. (ECF No. 244.) However, neither of these bases proffered by the Petitioner establish that his counsel was ineffective, as both allegations are directly contrary to his own statements under oath at his guilty plea on June 6, 2019. They are also directly contrary to the affirmations made in the signed Plea Agreement.

With respect to Ledford's claim that his counsel assured him he would receive a ten-year sentence, the Petitioner argues that had he known he was not guaranteed a ten-year sentence, he would not have pled guilty to the charges against him. However, on June 6, 2019, Ledford appeared before this Court and pled guilty in a manner that directly contradicts his argument. As detailed above, during those proceedings Ledford was placed under oath and informed the Court that he had fully discussed the charges, evidence, and witnesses with his attorney; he was satisfied with his attorney's representation and advice; and he understood that the Court was not bound by the suggestions of the parties in the Plea Agreement. He even affirmed that he understood that his attorney was unable to predict what this Court would do, as the Court itself had not yet decided. Ledford asserted that no one had made any other promises or assurances to him besides what was set out in the Agreement and its attachments. He also wrote to this Court stating it was his wish to cooperate with Government because it was the right thing to do and would help his victims. The Petitioner's allegations that he

9

believed that he was guaranteed a ten-year sentence and that such belief led him to plead guilty to the charges against him are directly contrary to his previous assertions.

"[W]hen a defendant says he lied at the Rule 11 colloquy, he bears a heavy burden in seeking to nullify the process." *United States v. Bowman*, 348 F.3d 216, 221-22 (4th Cir. 2005). A defendant may carry such burden when he alleges extraordinary circumstances, such as physical abuse or illness that required hospitalization occurring during arrest and before appearance in court. *See Fontaine v. United States*, 411 U.S. 213, 214 (1973). However, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established." *United States v. Lemaster*, 403 F.3d 216, 221-22 (4th Cir. 2005). As the Fourth Circuit instructs, "a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 222. Ledford has not provided this Court with any evidence to suggest that there are extraordinary circumstances in this case which would allow this Court to disregard his statements made under oath. Therefore, Ledford's statements made at the Rule 11 colloquy are presumptively true, and his argument that he believed he would receive a ten-year sentence is simply without merit.

With respect to Ledford's arguments regarding the calculation of the loss amount, this Court first notes that the U.S. Supreme Court has stated that in the absence of "a complete miscarriage of justice," § 2255 review is limited to constitutional and jurisdictional challenges. *See Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976). Accordingly, the Fourth Circuit has held that claims that the guidelines calculations were made in error "are not cognizable in § 2255 proceedings." *United States v. Goines*, 357 F.3d 469, 477 (4th Cir. 2004) (citing *Mikalajunas*, 186

10

F.3d at 496). Ledford did not file any appeal with respect to these guideline loss calculations. Second, even if Ledford's claim was cognizable, again his argument is contrary to his own statements and affirmations made in the Plea Agreement and at his arraignment. The Plea Agreement included factual stipulations which stated that the loss amount was between $250 million and $550 million. Ledford signed the Plea Agreement, acknowledging that he had reviewed the Agreement, and affirming that he "d[id] not wish to change any part of it." He then reiterated under oath on June 6, 2019 that the summary of the facts in the Agreement were correct and assured this Court that he had committed the crimes as described. Ledford also affirmed that his attorney had done everything he had asked of him. His allegation that the loss amount as provided in the Agreement was incorrect, and/or that his attorney refused to correct such alleged errors, is contrary to his sworn statements and accordingly without merit.

## CONCLUSION

For the foregoing reasons, Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (ECF No. 244) is DENIED.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, this Court is required to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that

reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Miller–El v. Cockrell*, 537 U.S. 322, 336-38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because reasonable jurists would not find Petitioner's claims debatable, a certificate of appealability is DENIED.

A Separate Order follows.

Dated: March 8, 2021.

_____/s/_____
Richard D. Bennett
United States District Judge